Happy to hear argument in Southern Walk versus Broadlands. Morning. It pleased the court. My name is Kurt Rommel and I'm pleased to be here on behalf of the Southern Walk at Broadlands Homeowner Association. With me at council table are my co-counsel Harvey Cohen and Constance Miller. We're here on an appeal from a dismissal with prejudice of Southern Walk's amended complaint. That amended complaint was dismissed on Openband's 12b6 motion to dismiss. Given that procedural posture, the threshold and overarching issue before this panel is whether the amended complaint stated a claim under the Twombly and Iqbal standards for plausibility, or as this court said in the Coleman case, whether the amended complaint raised the right to relief above a speculative level. Applying that very low standard, the decision of the district court should be reversed for three reasons. First, the amended complaint states a case for controversy. Second, Southern Walk has standing to sue both in its own name, in its own words. And third... You're just assuming arguendo if we were to reverse? What would you, what are you seeking on remand? It would be remanded back for a determination by the district court consistent with this court's ruling and part of that will depend on how the court rules with respect to the last issue that the district court purported to reach, which was the applicability of the FCC exclusive access ban to the telecommunication services agreement, the TSA, and the ancillary agreements that were executed simultaneously. If the court reaches that issue, either in this case or in the related case that you're going to hear later this morning, in a dispositive way, then we would ask the court to direct the district court to continue our case in light of that rule. You've looked at the complaints in the two cases. They're not identical, are they? They're not identical, but the documents upon which they're based are identical. Well, that may be so, but do you plead anywhere in this complaint that the Homeowners Association itself had any agreement with open ban? Yes. Oh, really? So you had a center where they supplied access in the same way that the other plaintiff did? My understanding is, and I don't... I thought you only pled through your homeowners. No, Your Honor. Well, then show me the place in the complaint. No, Your Honor. The Homeowners Association, its purpose as alleged in the which is the appendix at page 810, the purpose of the Homeowners Association was a single purpose and that was, excuse me, the single purpose was to provide for and install and maintain a private utility system for the benefit of its homeowners. That is the same provision that exists in the Lansdowne on the documents. The documents are identical except for the change in names. I think we've had a failure to communicate, as Paul Newman one time said. I understand that the underlying documents are the same. I'm asking you about a difference in your complaint and I read in the complaint that was filed in the other case that the internet provider, the defendant here, provided services directly to the Homeowners Association. They have some center that the homeowners go to. They presided and I didn't see that allegation in your complaint and if it's there, I'm happy to look at it. No, Your Honor is correct and I apologize for misunderstanding your question. There is not an allegation in our complaint that we maintain ourselves a technology center that is served by OpenVAN. So, in order to give you standing, you don't have an additional, you haven't named a homeowner. So, to give you standing, we have to find some basis other than your individual use of these services because you don't plead that because you don't have that, unlike the plaintiffs and the other complaints. Right? With all due respect, Your Honor, I don't agree with the premise of the question that we have to be using the services ourselves to have been harmed. We have to find something additional, some way, some basis that they don't have to show because they have a different relationship with the internet provider than you do. It would be different. Yes, that's correct. Okay, so I think that, at least for me, your initial problem here is standing. Maybe you want to talk about that. Let me go first to the individual standing and then I'll take up representative standing as well. Well, you don't have the individual standing you mean for your group? Yes, correct. How do they have any individual standing? Because we are the ones that have suffered the harms that the FCC was directing its order to. You better spell that out a little bit more. Since you don't have, it doesn't sound to me like you have any dog in this race. You, individually, your group, individually, your association, individually. I apologize for interrupting. The FCC identified a number of harms in its exclusive access order which are at volume 3 of the appendix, pages 1061 to 1065. The harms that the FCC identified as being caused by the exclusivity are harms that our organization suffers, which is we are barred from choice in identifying the services that we provide to our homeowners, which is our sole function. There is no competition from other wire based providers, which was the FCC's order, and new companies are barred or discouraged. Are you seeking standing in an individual or representative capacity? We believe both, your honor. Are you the, are you party to the agreements? Yes, we are party. The telecommunication services agreement, which is the principal agreement, is only between our organization and OpenVAN. Okay, and there's an exclusivity clause in the TSA? There is, and it is. Okay, so that's the basis of your individual standing? Correct. Is that you're party to the agreement? We are party to the agreement, which is violative of the FCC order, and therefore have standing to complain about the exclusivity provisions of that agreement. And what is, what's your theory of representative standing? In representative standing... But you're claiming both? We claim both, and we think we satisfy both. Under representative standing, under the Hunt and Maryland Highways case, Maryland Highways case before this court, there are three things that are required. One, that the members would otherwise have standing. Second, that the action is members' participation is not necessary for the relief, and we think we satisfy all of those. What do you do about the Summers case? Summers case, your honor, and I know that the OpenVAN has argued that we need to have essentially a named plaintiff or a named homeowner. With due respect to my colleague, I don't read the case that way. The Summers case, to me, is very distinguishable from this. The certainly distinguishable facts. Distinguishable... The Supreme Court says you have to name a plaintiff in whatever facts in order to have representational standing. We sort of follow right along there. With respect, your honor, it doesn't actually say that. What it says is that you have to be able to identify a member that has suffered or would suffer harm. I don't read the case anywhere to say that you actually have to name the defendant. And the reason that Summers is distinguishable from our case is Summers involved in environmental organization where the membership was voluntary. There was no way to identify who the members were, what their interests were. And what the Summers case said was, you had to be able to establish that one or more members would be directly affected. It didn't say you had to name them, but you had to be able to establish that one or more would be directly affected. It went on to say, relying on the Sierra Club matter, that you can't rely on statistical probabilities. What they were looking at there was whether there was any evidence at all that any of those members of that organization would, in fact, travel to the forest that was going to have its timber removed. And therefore, whether any of them would have been directly affected. Our case is very different because our members are directly affected by this lack of choice. They've all suffered the harms the FCC identified. They do not have a choice of providers. The attendant harms that flow from that that the FCC identified were a lack of improvements in technology, an increase in price, and a lack of competition, and a lack of choice. So all of those harms would be suffered by all of our members, which unlike the Summers case, is a very Well, this is, you corrected me on what the Supreme Court said in Summers, so I went back and looked at the case as you were arguing, and it says, we noted, it's talking about an earlier case, that the affidavit provided by the city to establish standing would be insufficient because it did not name individuals who were harmed by the challenged license revocation program. This requirement of dispensed with in light of statistical probabilities, but only where all the members of the organization are affected by the challenge activity, then citing the NAACP case. So I read Summers as saying that they've never dispensed with this requirement, unless you say that all of the members. But you can't make that representation because it may not be that every one of your members wants to Your Honor, as I read, you wouldn't dispute that they're going to have to pay some more money for this. Yes, that's correct. But on the other hand, I don't think it's necessary to say that they would change. We would not have to allege that they would change, only that they've suffered these harms. If they choose to suffer the harms, you have to allege an actual person suffering the harm to get by Summers, unless every single person that you assertedly are You cannot say that in this case. That is exactly what I'm saying, Your Honor, that all of our members do suffer the harm. You just conceded to me that not all of your members will suffer the harm. Some of them are going to undoubtedly stay with this internet provider. Your Honor, I think the distinction... I think I understand, and I think my colleagues understand the distinction you make, but if I could circle back to the standing that you own right, don't you have to claim that you were harmed? Yes. Okay, but isn't the bulk billing arrangement the reason that you were harmed? The bulk billing arrangement has to do with finances, and we're not claiming a financial harm. But that's the only kind... that's the only way this affects you. You're not affected by the other agreement, because that goes right on to your homeowners. Again, that's... the only way you are costing... only way this costs you anything is through the bulk billing arrangement. The way Your Honor has phrased the question, that's correct, but the question is not whether it costs us anything. The question is whether we're harmed, and the harms are not cost related. I thought the harm that you alleged here was a harm to your ability to obtain cable service for your constituents. Competing cable services, different cable services from alternate providers. That's correct. That was the... that was the harm. You were party to the agreement, and that you were harmed in the sense that you could not provide a menu of cable services to your constituents. That's correct, and that's the harm that the FCC identified in adopting the exclusive access order. They found that the harms flowed, and the costs, but as far as the organization is concerned, we are charged as a fiduciary with obtaining these services on behalf of our members. We don't have the options to do that. We cannot provide them choice, and therefore those harms, which are identified by the FCC, are incurred by our organization as well. If I could move past the standing, unless there are further questions on that issue, just briefly in the time I have remaining to the FCC exclusive access ban. The district board... Tell me again on the standing point. You say your members are directly affected. I'm talking not about individual standing, but about representative standing. Right. Because I think that, you know, if you went on either one of those, you have standing. Correct, but it's alternative. In terms of the Summers, how do you... why do you think you are absolved on the point of not naming an individual member who suffers injury here? As I was responding to Justice Motz a few moments ago, I think Summers is distinguishable, and I read Summers to say you have to identify that it is more than speculative that your members will suffer the harm. No, that was the argument that was made to the Supreme Court, is that it is more than speculative here. That it is bound to happen. The Supreme Court says, no go. You've got to name someone. Or show that all of them suffer the harm. Right, but the only instance where they did that was when the NAACP was challenging some racially discriminatory provisions. And in that case, it was an identifiable group that you could say suffered the harms. And that every one of them suffered the harm because every one of them was discriminated against. And that is our case here, and I would analogize to an automobile accident case. Say you have a car with four people, there's an automobile accident, all four are injured. It doesn't necessarily mean, in accordance with the question that you asked earlier, Justice Motz, that they all would necessarily sue. Some people are satisfied just to put up with the pain and let it go away. That doesn't mean they weren't injured or they weren't harmed. It simply means they aren't proceeding forward. In a like way, I can't represent to this panel that every one of our members would necessarily change their service. Let's use your example. Let's make it a train wreck. So there are 100 people, and one of them sues. Or somebody representing one of them. Some organization that they belong to. They belong to Women Against Drunk Driving. And Women Against Drunk Driving sues. One of those people is going to be hurt, but if they don't name one of them, they don't have standing. I don't think we're meeting here. Because it seems to me, maybe the Supreme Court's wrong, but you shouldn't have to name an individual. I think you clearly have to. If this case goes to the Supreme Court, they say there is no individual standing. May I continue? I see my time is up. Just to respond. I'm not asking this court to reverse the Supreme Court. I'm simply saying, apply Summers in the way Summers was intended, which is, all the members are harmed. I'm not representing that they all would proceed or change their service, because I don't have to. But they have all suffered the harms, just like the members in the car, just like the people on the train. Isn't your argument, I mean, this isn't analogous to a train wreck or what have you, because you're not just a stranger walking into court out of the cold. I mean, you're an actual, you are a party, a signatory, as I understand it. You're a signatory to the agreement. Correct. And that's the individual standing. Yeah, and you have a fiduciary obligation as a homeowner association to the homeowners to provide them with a choice of services and a menu of services. And that is a different kind of thing from, I mean, both of those, the fact that you're a party, and you're a party and you have a fiduciary relationship. And that brings you to a closer, gives you a closer nexus to the case, allows you to plead a cognizable injury, which is what the Supreme Court, I think, is concerned is that they don't want an injury which is undifferentiated from a general public injury. Correct. And like the NCAA. So, yeah, I mean, I just wanted to make sure I knew what your argument was on this point. That's independent, as I understand it, of the Summers point? Correct. Okay, thank you. You have some time for rebuttal. Mr. Saunders? Thank you, Your Honor. May it please the Court. We're here this morning on behalf of Open Band at Broadlands in response to Judge Lee's dismissal with prejudice on the merits of the lack of subject matter jurisdiction for the case below. Quite simply, the plaintiff does not have standing. It doesn't have standing in its representational capacity. And as Judge Lee found, it does not have standing in its individual capacity because it doesn't take services from Open Band, and it is not responsible for providing service to the homeowners. Its responsibility to the homeowners is limited to administrating the providing of services by Open Band pursuant to the telecommunications services. It's the one that's party to the contract. The homeowners are party to the contracts with Open Band as well. They sign contracts with Open Band for the provision of services. Well, what does the plaintiff, what are its contractual obligations with Open Band? Its contractual obligations are to make a monthly payment that is based upon dues that are paid by the homeowners, and it's part of their overall dues package. So that's the obligation for the homeowners association. The homeowners association has other problems with standing here is we have no right case in controversy. This is a theory. What I'm nervous about is, because I understand the point on representational standing, but what I'm nervous about is a party to a contract. Not being able to sue if there's a provision of the contract that's in violation of law. I mean, wouldn't a party to the contract be a logical one to sue if there was a provision of the contract that was in violation of law? Standing requires there actually be a violation, and your honor, the violation here is not the... First of all, we step back. For argument's sake, let's assume for a second that the TSA is exclusive, which we argue that it's not. But for argument's sake, if you were to accept that, the TSA is still not in violation of the 2007 order. Excuse me? That goes to the merits. I mean, you contend it's not in violation of the FCC order, and they contend it is. But it does go to the standing element because the mere existence of the cause as a matter of law is not the violation. What would have to take place for there to be standing in this case... Give me a situation where there's a representative plaintiff, an associational plaintiff, that was not allowed standing to challenge a contractual provision or breach of contract or whatever, where it was an actual party to the contract. Well, your honor, if there were a breach, that would be a different story. But there's no breach here. And in fact, if what plaintiff is arguing is there's a breach, they have no right to be in this court because there are provisions in the telecommunications service agreement that require notice and cure. There's no breach. But there's a question of whether a provision in the contract is in violation of law. And that's my point, your honor. At this point, the question isn't ripe for this court. Because in order for there to be a question as to whether it's violative, there has to be an act, there has to be a disobedience of the FCC order. There has to be an instance where another provider has been denied entry. No, no, no. You're floating into the merits. But we want you to talk about, and maybe you don't have an argument, but I would be interested in your addressing Judge Wilkinson's question, too, and sticking with standing. And if you can't do that, fine. The three elements of standing, your honor, are whether the case is ripe, whether there is an actual case in controversy, whether there is a direct injury, and then whether there is an injury that can be redressed by this court. You don't want to talk about the element of standing that we were talking about with your colleague. Is that right? You're ready to give up on that one? No, no, no. Well, then maybe you can address that one first. Still, on the direct harm, your honor, on direct harm, it is the fact that the Homeowners Association has no obligation that is being interfered with. It doesn't run. It doesn't provide the cable services to the homeowners. But the homeowners, I mean, what does it exist for? I mean, you're arguing that it's nothing but a shell. I mean, what does it exist for if it can't offer some menu of services to the customers? One of the things that I'm concerned about here is that this provision seems to me to be, on the face of it, the very thing that the FCC order was aimed at, which was exclusivity provisions that deprive the consumers of cable services, of the elements of competition, which are choice of services and price. And to say that, well, we can't get at it, it troubles me because it lets something that seems to me incolorably violative of the whole purpose of an FCC order and just allows it to stand. Now, there may be some argument, and I take your point about the representative standing, but I'm hard-pressed to see how an organization that's representative of the homeowners, where the homeowner's interest is in having some competitive situation there, and is party to the contract, can't come into court to raise a question as to a provision of the contract. Well, Your Honor, as to the representational part, which we've talked, which has been discussed, again, as the representational part, they haven't alleged a specific member, and the mere fact that members may have an interest has never been sufficient for an association to have standing under all circumstances to file cases. If the homeowners association here... No, I'm not talking about that. I'm talking about their individual. I'm talking about the tougher argument for you, which is the individual standing. These are... When we talk about train wrecks and auto wrecks and that kind of thing, and the Mothers Against Drunk Driving is a very interesting parallel because the Mothers Against Drunk Driving don't have any contract with anyone. Your Honor, the contract here doesn't provide for the homeowners association to play any role in selection or the providing of video services or any telecommunication services to the homeowners themselves. There is no... They are not being stopped from doing anything that they have an obligation to the homeowners to do in the TSA. And... What about their relationship to the homeowners? Well, their relationship... The homeowners association's relationship... Well, if it's separate and apart from the TSA, then their being a partier to the TSA is not material. Then it has to come out of something else. It's a matter of law. The homeowners association doesn't have a fiduciary duty to the homeowners. And the homeowners association only has the obligations that are in the Articles of Incorporation, which Judge Lee referenced in his opinion, that they are to administrate. And that is different from selecting, offering, and providing choice. And even... I'm sorry, excuse me, but if we should go, if we should conclude that they are entitled to relief, what about redressability here? Would our finding that they are correct give them redressability for the asserted injury? I thought that the bulk billing arrangement was key to that. It is, Your Honor, and that's... So whatever relief they got wouldn't get them what they want anyway? It depends on which relief they're talking about. They've got two problems. First, they have the bulk billing agreement, which to the extent if they are complaining about payments, they have to pay. And the FCC has blessed bulk billing agreements, and they have to pay for the service regardless of whether they take it that is permissible, and it is found to be pro-competitive by the FCC in the 2010 FCC order, the follow-on to the 2007 order. They have a second problem. If they claim that the injury is inability of choice, they don't have... No other provider has come forward. There has not been any offer, but, Your Honor, and this court can't force anybody. In part, they're not going to... You know, they're facing a big legal fight, and as far as they know, the exclusivity arrangement is valid, and they're not going to sink, you know, the cost of laying cable lines only to find, you know, they're in violation of a contract. See, you've just shot yourself in the foot, because if we do away with the exclusivity agreement, that thing goes away. But what I asked you was, doesn't the bulk billing arrangement still require them to pay, so there's no difference in their status? As far as payment is concerned, that's correct, Your Honor. They don't get the service directly, so how is their status affected in any way? No, their status, as far as the TSA is concerned, is not affected. It's not, Your Honor. So granting them the relief that they request does not affect their status at all? Correct. Their homeowner's status may be affected, but we're saying they're suing in their own rights if we follow Summers. They have to have some injury in their own rights. That's correct, Your Honor. The term of the TSA, the payment provisions, et cetera, are all unaffected, and the FCC made that clear in its 2007 order at paragraph 35. I'm sorry, 37, where it stated that no other contractual obligations are affected. So the court can't change that issue for them here, even if it finds standing, and even if it finds that the TSA is violent. It can't relieve them of that obligation. That was, in part, what Judge Lee was talking about. Remember, the complaint itself here seeks to have... The complaint itself seeks complete voiding of the TSA and all the ancillary agreements. The complaint isn't limited to the issue of video service, and the 2007 order says that even if you have a violation on exclusivity, you don't blow up all the rest of the agreements. They're overreaching. They can't get the relief they seek. Well, let me just ask you this question. If we should conclude that the plaintiffs in this case do not have standing for one reason or another, but the plaintiffs in the case that follows yours, I assume you've read the various opinion and the briefs in that case, have you? Yes, Your Honor. If the plaintiffs in that case should prevail, we could simply remain here for a determination in light of this case, couldn't we? Your Honor, that would have to reach a different issue. If the plaintiffs in the first case, in the Lansdowne case, have standing for a different reason, then there are issues as to the substantive issues which are separate. But there's still no standing, there's still no right case or controversy for the Brotherlands. And they often do. We would have to take a look at that because you have a question of the fact that they filed three complaints. Sometimes people file even more. And they've had two dismissed, and they haven't taken an appeal from the rejection of the third. So I'm not sure what they can do. And again, that's part of the speculative nature. You wouldn't say that the court doesn't have authority to affirm but remand for entry of a judgment dismissing without prejudice. You wouldn't say that, would you? No. What leg would you have to stand on if we found against your position or against the exclusivity agreements in the companion case? The only leg would be lack of standing here. And there would still be the issues of redressability and going back to actual harm and rightness. Where the court stands right now, the best the court can do is issue an advisory opinion. And that's not what the courts are here to do. They need to have an actual case or controversy. In this case. In this case, and the plaintiffs have not pled it despite three tries. My time is up. Thank you. Mr. Rommel. Thank you. I know I used some of my time. I don't have much time left. But there are a few things that I'd like to address. One issue that was raised by your question, Judge Wilkinson, is the fact that we are the party to the contract. We are the party to the TSA, which we've alleged is violative of the FCC, Exclusive Access Ban. 47 CFR 76.2000 says that those types of agreements, if it meets the criteria, are null and void. If we, as the only other party to the contract, don't have the ability to challenge whether the contract which we are signatory is null and void, I'm not sure what party would. Are any of the homeowners party to any contract with the open ban group? They all are. The homeowners were supposed to have, and there's no evidence yet whether they all did or not, but they were supposed to have signed at the time of closing an agreement to be bound by. But your claim is that this case, the agreements here are exactly like the agreements in the other case, and they certainly are all parties to the agreement in the other case. So if you're correct about the underlying documents being identical, all of your homeowners would be party to this. To a three-party, what they call the three-party agreement. I just can't represent. You were just saying now that you weren't sure whether they were or not. I can't represent to the panel. If the two documents are identical, which you earlier represented to us, they all would be parties to it, correct? I represent to the panel that it was supposed to have been done that way, but I can't represent. You represent to the panel that they're identical, the two agreements? That's my understanding. Then they would be parties to it if they are identical. There were supposed to have been agreements signed by the homeowners. They're identical in all except for this. Is that correct? I'm not trying to mince words. I'm just trying to be correct. Well, you sound a lot like that. No, I'm just trying to be accurate. So are the homeowners party to the agreements, to exclusivity agreements? They did not sign an exclusivity agreement. What they signed was a three-party agreement agreeing to be bound by the other agreements. So that may be the same thing. So the exclusivity agreements are incorporated by reference? I believe so. And what is the source in law of your fiduciary duty to provide the service, to provide a choice of services to the members of the homeowners association? You said, well, we are under a fiduciary duty to provide services. As alleged in our amended complaint at paragraph seven, our sole purpose is to administer the telecommunications services agreement for the benefit of the homeowners. Our obligation is to do that to the best of our ability. Does it say, can I point to a document that says we have to provide you choice? Where is that that you just read? That's from the amended complaint, paragraph seven. That's what you allege. Correct. But what gets us to a fiduciary duty? I thought you had a contractual obligation. We have a contractual obligation. Whatever obligations you have are contractual. We have a contractual obligation to open band. But there's no, like, floating fiduciary duty in the law. You know, we talk about a fiduciary duty to a trust. There's nothing like that. We are a non-stock corporation with duties to our non-stock members. Our members are not stockholders because there's not stock. But we are a non-stock corporation, and like the board of directors of any corporation, we owe duty to our constituent members, which are the homeowners in this instance. That doesn't get individual stockholders much relief, usually, does it? Well, I mean, there is – All the scandals on Wall Street. Whether the directors comply with their obligations or not is a separate question. Well, they're apparently not actionable. I'd like to turn finally to the question that you raised, Justice Motz, with respect to the bulk billing. The redress that is available and that we would be asking for doesn't deal with the bulk billing question. We understand that – But that's the only reason that you have to pay, is because of the bulk billing arrangement. And, again, our harms are not pay-related. Our harms are the competition-related. And some of our – You don't suffer from the competition-related either because you don't have a visitor center or a center for all of your people where you are using these services, you individually. We suffer – The harm we suffer is not being able to provide choice to our members. Correct. And what we're asking for, ultimately, the redress that our homeowners would get, that we would be asking for on their behalf, is the ability to contract with Verizon for FIO services or to contract with a Comcast for their triple play, whatever they call that. The homeowners want that choice, irrespective of any obligation they may have under the bulk billing, and that's what we're asking for from this court. Thank you. Thank you. We will come down and greet counsel. Excuse me, sir. You don't have rebuttal time, do you? There's no – Oh, yes, there is. Okay, you've got it. I see you've reserved some time. Is there a cross appeal or what? Yes, Your Honor. And as to counsel's last point on the relief as to what the homeowners are seeking and the reference to the contracting, counsel has just explained why this court cannot provide the relief and why there is no – they're overreaching and why they can't have standing. Because counsel has said they want – which is video, Internet, and telephone services. The 2007 order only bars exclusivity as to video. There is no issue as to exclusivity to Internet and telephone services. That relief is impossible. I recognize that you made this argument the first time around, and the problem with it is the plaintiffs often ask for more than they are entitled to, and they are given by either a jury or court that to which they are entitled. So your argument on this point goes to the merits. Now, if you want to make that argument, that's fine. But, Your Honor, to the extent they're trying to argue that that was their harm, Your Honor, I'm just saying it's a harm that – it's a harm they can't allege. They can't allege all of it, some of it. But they've argued it as a package. They didn't argue them in the alternative. So that's the point, Your Honor. If that's the relief they seek, they can't get it from this court. This court can't provide it. Thank you, Your Honor. That's it. We'll wait the rest of the time.
judges: J. Harvie Wilkinson III, Diana Gribbon Motz, Stephanie D. Thacker